1 | Tarek H. Zohdy (SBN 247775)
2 | Tarek.Zohdy@capstonelawyers.com
Cody R. Padgett (SBN 275553)
3 | Cody.Padgett@capstonelawyers.com
Laura E. Goolsby (SBN 321721)
4 | Laura.Goolsby@capstonelawyers.com
Nathan N. Kiyam (SBN 317677)
5 | Nate.Kiyam@capstonelawyers.com
CAPSTONE LAW APC
6 | 1875 Century Park East, Suite 1000
Los Angeles, California 90067
7 | Telephone:  (310) 556-4811
Facsimile:   (310) 943-0396

8 | Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ALANA GUTIERREZ, individually, and on behalf of a class of similarly situated individuals,

Plaintiff,

v.

ABBOTT LABORATORIES, an Illinois corporation,

Defendants.

Case No.:

**CLASS ACTION COMPLAINT FOR:**

   (1) Violation of California's Consumer Legal Remedies Act ("CLRA")
   (2) Violation of California's Unfair Competition Law
   (3) Violation of California's False Advertising Law
   (4) Common Law Fraud, Deceit, and/or Misrepresentation
   (5) Unjust Enrichment
   (6) Injunctive Relief

**DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. Plaintiff Alana Gutierrez ("Plaintiff") brings this Complaint individually and on behalf of all persons similarly situated against Abbott Laboratories ("Abbott" or "Defendants") to seek redress for Defendants' deceptive and unlawful practices in labeling and marketing Go & Grow 360 Total Care by Similac Toddler Drink ("Go & Grow" or "the Product").

2. Intending to profit from parents' increasing desire to purchase food for their young children that provides physical health benefits, Defendants misbrand the Product by making nutrient content claims on the product packages that are strictly prohibited by the Food and Drug Administration ("FDA"). Moreover, the nutrient content claims on the Product misleads purchasers into believing that the products provide physical health benefits for children under two years of age in order to induce parents into purchasing Defendants' products. In fact, the Product is harmful both nutritionally and developmentally for children under two.

3. Defendants' misleading labeling caused Plaintiff and members of the class to pay a price premium for the Product.

**THE PARTIES**

4. Plaintiff is a California citizen residing in Shingle Springs, California.

5. In or around July 2021, and for about five (5) to six (6) months thereafter, Plaintiff purchased the Product for her child when he was one (1) year old from Target, Walmart, and/or WinCo Foods. Plaintiff purchased the Product in reliance on the representations on the packaging that the Product provides physical health benefits for children under two years of age. But for these representations, Plaintiff would not have purchased the Product.

6. Defendant Abbott Laboratories is a corporation organized and in existence under the laws of the State of Illinois and registered to do business in the state of California. Abbott Laboratories is headquartered in Abbott Park, Illinois.

CLASS ACTION COMPLAINT

**JURISDICTION**

7. This is a class action.

8. Members of the proposed Class number more than 100 and at least one plaintiff and one defendant are citizens of different states.

9. There are at least 100 members in the proposed class, and the aggregate claims of individual Class Members exceed $5,000,000.00 in value, exclusive of interest and costs.

10. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d).

11. This Court has personal jurisdiction over Plaintiff because Plaintiff submits to this Court's jurisdiction. This Court has personal jurisdiction over Defendants because they conduct substantial business in this District and discovery will show that significant conduct involving Defendants giving rise to the Complaint took place in this District.

**VENUE**

12. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because the conduct giving rise to this lawsuit occurred here and Defendants are subject to personal jurisdiction here by conducting business within the State of California. Plaintiff's counsel's Declaration of Venue, to the extent required under California Civil Code section 1780(d), is attached hereto as **Exhibit 1**.

**FACTUAL ALLEGATIONS**

13. Defendants manufacture, distribute, market, advertise, and sell toddler drink products under the brand name "Go & Grow." These products have packaging that predominately, uniformly, and consistently makes nutrient content claims on the principal display panel of the product labels. A non-exhaustive demonstrative of Go & Grow's labeling, which contain nutrient content claims, is attached hereto as **Exhibit 2**.

14. The Product is intended for children under the age of two. The Product is labeled with the intended age for the Product on the front label, "12-

36 MONTHS."

15.    FDA regulations explicitly prohibit certain nutrient content claims on foods intended for children under the age of two. 21 C.F.R. § 101.13(b)(3).

16.    Defendants nevertheless make nutrient content claims on the Product label.

17.    For example, the Product states on the label, "✓ IMMUNE SUPPORT;" "✓ BRAIN DEVELOPMENT;" "✓ DIGESTIVE HEALTH;" "DHA, LUTEIN, VITAMIN E;" "5 HMO PREBIOTICS;" "**2 servings have:  28 IMPORTANT NUTRIENTS for GROWTH and DEVELOPMENT** (emphasis in original);" and "At least 40% of the Daily Value: Iron • Calcium • Vitamins C, D & E."

18.    As described in detail below, Defendants' advertising and labeling of the Product with nutrient content claims is unlawful, misleading, deceptive, and intended to induce consumers to purchase the Product at a premium price. These claims deceive and mislead reasonable consumers into believing that the Product provide physical health benefits for their child when in fact, the Product is harmful for children under two both nutritionally and developmentally.

**Federal and State Regulations Governing Food Labeling**

19.    The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age," subject to certain exceptions not applicable here. 21 C.F.R. § 101.13(b)(3).

20.    According to the regulations, nutrient content claims can be expressed or implied. 21 C.F.R. § 101.13(b)(1), 21 C.F.R. § 101.13(b)(2).

21.    An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). Further,

1    where information that is required or permitted to be "declared in nutrition

2    labeling, and that appears as part of the nutrition label . . . is declared elsewhere

3    on the label or in labeling, it is a nutrient content claim and is subject to the

4    requirements for nutrient content claims." 21 C.F.R. § 101.13(b)(1).

5          22.    An implied nutrient content claim is any claim that: "(i) Describes the

6    food or an ingredient therein in a manner that suggests that a nutrient is absent

7    or present in a certain amount (e.g., "high in oat bran"); or (ii) Suggests that the

8    food, because of its nutrient content, may be useful in maintaining healthy dietary

9    practices and is made in association with an explicit claim or statement about a

10   nutrient (e.g., "healthy, contains 3 grams (g) of fat")." 21 C.F.R. § 1013(b)(2).

11         23.    The FDA explicitly regulates certain nutrient content claims such

12   as "more" claims. "More" claims use terms such as "more," "added," "plus," or

13   synonyms to describe the level of a nutrient in a food. 21 C.F.R. § 101.54(e).

14   Where the claim is based on a nutrient that has been added to the food, the food

15   must comply with the FDA's Fortification Policy, as stated in 21 C.F.R. § 104.20.

16   *See* 21 C.F.R. § 101.54(e)(ii).

17         24.    The Fortification Policy only allows for fortification under

18   specific circumstances. The Fortification Policy goes on to list four circumstances

19   where fortification is appropriate:

20         a.     "[T]o correct    a    dietary    insufficiency recognized by

21                the    scientific community. . ."

22         b.     "[T]o restore such nutrient(s) to a level(s) representative of the food

23                prior to storage, handling and processing. . ."

24         c.     "[I]n proportion to the total caloric content. . . to balance the vitamin,

25                mineral, and protein content…"

26         d.     "to avoid nutritional inferiority" when replacing a traditional food.

27   21 C.F.R. § 104.20(b)-(e).

28         25.    Identical federal and California laws regulate the content of labels

on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. § 101, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed herein are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on labeling of packaged food for sale in the United States.

26. California's adoption of food regulations that are identical to the federal regulations stems from the state's "historic police powers" to regulate food labeling, which long-predates the enactment of the FDCA. *See Plumley v. Massachusetts,* 155 U.S. 461, 472 (1894) ("if there be any subject over which it would seem the states ought to have plenary control, and the power to legislate in respect to which … it is the protection of the people against fraud and deception in the sale of food products."); *see* also *Florida Lime & Avocado Growers v. Paul*, 373 U.S. 132, 144 (1963) ("States have always possessed a legitimate interest in 'the protection of (their) people against fraud and deception in the sale of food products' at retail markets within their borders.") (citation omitted)

27. Although California amended its food labeling laws in 1995 in response to the federal implementation of the 1993 Nutrition Labeling and Education Act, California's regulations of food labels predate the enactment of the Sherman Law. For example, the current Cal. Health & Safety Code § 110660 invoked herein states "[a]ny food is misbranded if its labeling is false or misleading in any particular." California originally enacted this regulation in 1939,

previously found at Cal. Health & Safety Code § 26490. *See People v. 748 Cases of Life Saver Candy Drops*, 94 Cal. App. 2d 599, 607 (1949) (applying section 26490 prohibition on "labeling is false or misleading in any particular" in food labeling claim in 1949).

28.    Under the FDCA, the term "misleading" covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

29.    Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific numerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is misleading).

30.    Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

31.    Representing that the Product will provide certain health benefits by making unlawful nutrient content claims as Defendants' labels do is prohibited by the aforementioned misbranding laws and regulations.

32.    The regulations relating to nutrient content claims discussed herein are intended to ensure that consumers are not misled as to the actual or relative nutritional value of food products.

**Defendants' Marketing and Labeling of the Product Violates State and Federal Food Labeling Laws**

33.    The Product is unlawful, misbranded, and violates the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Product is intended for children less than 2 years of age and the Product's label contains nutrient content claims.

34.    As described above, the Product at issue in this case is intended for

1    children one year and up as evidenced on the front label and in the Product title.

2          35.    Beyond the Product label, the Product is also sold in the "Baby Food"

3    grocery store aisles, alongside infant formulas.  On information and belief,

4    Defendants direct retailers to sell the Product in the baby food aisle.

5          36.    Defendants misbrand the Product by making nutrient content

6    claims that are strictly prohibited by the FDA, and by misleading purchasers into

7    believing that its Product provides physical health benefits in order to induce

8    parents into purchasing the Product.

9          37.    The Product's front and back labels contain nutrient content claims

10   that are unlawful.  As shown in **Exhibit 2**, the Product prominently states nutrient

11   content claims on the front label such as "✓ IMMUNE SUPPORT;"

12   "✓   BRAIN DEVELOPMENT;" "✓ DIGESTIVE HEALTH;" "DHA, LUTEIN,

13   VITAMIN E;" and "5 HMO PREBIOTICS."   Further, the Product's back label

14   states:  "**2 servings have:  28 IMPORTANT NUTRIENTS for GROWTH and**

15   **DEVELOPMENT** (emphasis in original);" and "At least 40% of the Daily Value:

16   Iron • Calcium • Vitamins C, D & E."  The terms "IMMUNE SUPPORT, BRAIN

17   DEVELOPMENT, and DIGESTIVE HEALTH" in conjunction with prominent

18   images of checkmarks;  "5 HMO PREBIOTICS;"  "**28 IMPORTANT**

19   **NUTRIENTS for GROWTH and DEVELOPMENT** (emphasis in original)" are

20   each implied nutrient content claims.  In addition, the statement "At least 40% of

21   the Daily Value: Iron • Calcium • Vitamins C, D & E" is an express nutrient content

22   claim.   In the alternative, it is an implied nutrient claim. *See*  21  C.F.R.  §

23   101.13(b)(2);  *FDA, Guidance for Industry: A Labeling Guide for Restaurants*

24   *and Other Retail Establishments Selling Away- From-Home Foods*, 2008 WL

25   2155726, at  *10 (April 2008) (explicit statement about a nutrient alongside

26   synonyms of healthy are implied nutrient content claims).

27          38.    Foods intended for children less than two are prohibited from

28   making such nutrient content claims. 21 C.F.R. § 101.13(b)(3). Therefore, the

1   Product is accordingly misbranded.

2   39.   In addition to being unlawful, the nutrient content claims on the

3   Product are also separately misleading.

4   40.   Reasonable consumers rely on the label claims to decide to

5   purchase the Product for children under two years old. Reasonable consumers

6   shopping in the baby food aisle of a grocery or online retailer see the Product

7   alongside products intended for children as young as six months and purchase

8   the Product for their toddler under the age of two.

9   41.   The nutrient content claims on the Product misleads reasonable

10   consumers into believing the Product will provide physical health benefits for their

11   children, when in fact the Product is harmful.

12   42.   The FDA has long warned that nutrient content claims could be

13   misleading. This is especially true in the context of children under two because

14   there are different recommended daily nutrient intakes for children 0-12 months;

15   1-3 years; and 4 years and above.

16   43.   The FDA described the purpose of nutrient content claim regulations

17   to be "promoting sound nutrition for the nation's consumers." 56 Fed. Reg. 60421.

18   The FDA relies on the USDA's development of Dietary Guidelines as the basis for

19   encouraging and discouraging the "selection of foods containing low or high levels

20   of certain nutrients as part of an overall diet." *Id.*

21   44.   The FDA forbids nutrient content claims on products intended for

22   children under two because "the agency lacks evidence that a more restrictive

23   dietary pattern for other nutrients such as sodium or an increased intake for

24   nutrients such as fiber are appropriate and recommended for infants and

25   toddlers." 56 Fed. Reg. 60421; *see* also 58 Fed. Reg. 33731, 33733. Although

26   it has been nearly thirty years, not much has changed regarding the evidence as

27   explained below.

28   45.   At the time the regulation was implemented, there were

Recommended Daily Intakes ("RDI") and Daily Recommended Values ("DRV") for most nutrients for children under two. *See* 58 Fed. Reg. 2302, 2305 (stating there are RDIs for children under two); 58 FR 2206, 2211 (providing the RDIs). Despite knowing the target daily intake of nutrients for these ages, the FDA concluded that it would not be appropriate to promote nutrients on labels for this young group because "relatively little attention has been given" to the dietary patterns of children under two. 56 Fed. Reg. 60421; *see* also 60 Fed. Reg. 67184, 67191.

46.     The same is true today. For example, there are still RDIs and DRVs for most nutrients for children under two. Just as in 1991, the RDIs and DRVs of nutrients is different for different ages, with a different set of values for children 0-12 months, 1-3 years old, and 4 and above. 21 C.F.R. § 101.9(c)(8)(4). And just as in 1991, in 2020 a USDA working group concluded "[d]eveloping recommended food patterns for infants and toddlers ages 6 to 24 months is challenging. . . in part because the scientific evidence for many questions is relatively scant." Dietary Guidelines Advisory Committee. 2020. *Scientific Report of the 2020 Dietary Guidelines Advisory Committee: Advisory Report to the Secretary of Agriculture and the Secretary of Health and Human Services*. (hereinafter "2020 Scientific Report").[1]

47.     Children under two have unique dietary needs because they are experiencing huge amounts of growth, but eating relatively little solid food. Therefore, it is important that children under two receive the "most nutrient dense foods available in the household." Dewey KG. *The challenge of meeting nutrient needs of infants and young children during the period of complementary feeding: an evolutionary perspective.* J Nutr. 2013 Dec;143(12):2050-4. doi:10.3945/jn.113.182527. Epub 2013 Oct 16. PMID: 24132575; PMCID: PMC3827643.

---

[1] U.S. Department of Agriculture, Agricultural Research Service, Washington, DC. Available at: https://doi.org/10.52570/DGAC2020.

48.     The American Academy of Pediatrics ("AAP") published a clinical report titled "Older Infant-Young Child 'Formulas'" in November 2023 about "the lack of standardization in nomenclature and composition as well as questionable marketing practices" of formulas directed at older infants and toddlers 6 to 36 months of age ("OIYCFs").[2] In it, the AAP explain that "[m]arketing of products in this age group….is often based on vague concerns parents have that their child is not getting some needed micronutrients and that these are uniquely provided by OIYCFs." In fact, the AAP explained, the World Health Assembly has long recognized specialty formula milks for older infants as unnecessary and the AAP, as well as other expert organizations, have recommended "breastfeeding through 2 years of age or longer or whole cow's milk and other acceptable nonformula dairy sources in conjunction with appropriate complementary solid foods as nutritionally adequate."[3] Additionally, the AAP stated that "[c]laims of brain development or immune function have incorrectly shown to influence parents' belief that OIYCFs are healthier than cow milk and promotes their intention to provide OIYCFs to their children."

49.     Defendants' labeling and marketing of their Product capitalize on the exact concerns and beliefs that the AAP describes. For example, the back label of the Product states, "**2 servings have:   28 IMPORTANT NUTRIENTS for GROWTH and DEVELOPMENT** (emphasis in original)." As a further example, the front label includes the terms "✓   IMMUNE SUPPORT," "✓   BRAIN DEVELOPMENT," and "✓ DIGESTIVE HEALTH" with prominent images of checkmarks meant to catch the eye. By echoing the nutritional concerns of parents and including vague buzzwords, claims, and graphics regarding growth, development, immune support, brain development, and digestive health,

---

[2] Fuchs GJ, Abrams SA, Amevor AA, et al. American Academy of Pediatrics, Committee on Nutrition. Older Infant-Young Child "Formulas" Pediatrics. 2023; 152(5):e2023064050, available at: https://www.researchgate.net/publication/374896188_Older_Infant-Young_Child_Formulas (last accessed July 24, 2024).

[3] *Id.*

1    Defendants induce and mislead consumers into purchasing their Product for fear

2    that a diet without the Product is nutritionally inadequate for their toddlers.

3        50.    Dietary needs for children under two are also different from those of

4    adults because the optimal diet for children under two also has to address needs

5    beyond mere nutrition, such as developing neural pathways in the brain to establish

6    healthy eating habits and developing gross and fine motor skills. The USDA-

7    recommended diet for children under two includes nutrient-dense foods that

8    promote exposure to new flavors and textures. Dietary Guidelines for Americans,

9    2020-2025. 9th Edition. December 2020. Available at DietaryGuidelines.gov

10   (hereinafter "USDA Dietary Guidelines"). The Dietary Guidelines emphasize that

11   the period of 0-24 months "is key for establishing healthy dietary patterns that may

12   influence the trajectory of eating behaviors and health throughout the life

13   course…Children in this age group consume small quantities of foods, so it's

14   important to make every bite count!" Dietary Guidelines at 53. The AAP also stated

15   in their clinical report, "…in the case of toddlers, developing taste preferences for a

16   mixed diet is ideal."[4] By making nutrient content claims on its packages' front labels,

17   Defendants mislead consumers into believing that foods for children under two

18   should be purchased based on the quantities of the listed nutrients, when other

19   considerations are just as, or more, important.

20       51.    The Guidelines also recommend that children "younger than age 2"

21   completely "[a]void foods and beverages with added sugars." Dietary Guidelines at

22   61.  Defendants' Product has 4 grams of added sugars.

23       52.    For these reasons, Defendants marketing the Product as providing

24   physical health benefits for toddlers being a healthful and safe source of nutrients

25   for babies and toddlers is misleading to reasonable consumers and the Product is

26   actually harmful for children under two both nutritionally and developmentally.

27

28   _____
     [4] *Id*.

53.     Defendants' marketing, advertising, and sale of the Product violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

    a.  Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

    b.  Section 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food; and

    c.  Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

54.     Defendants' marketing, advertising, and sale of the Product violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

    a.  Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

    b.  Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

    c.  Section 110765, which makes it unlawful for any person to misbrand any food; and

    d.  Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

55.     Defendants have violated 21 U.S.C. § 343(a), and the standards

set by FDA regulations, including, but not limited to, 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and 104.20, which have been incorporated by reference in the Sherman Law, by including impermissible nutrient content claims on the labels of foods intended for children less than 2 years of age, including misleading claims on the f r o n t a n d b a c k labels.

56.     A reasonable consumer would rely on the label claims to decide to purchase the Product. For example, Defendants' nutrient content claims mislead a reasonable consumer to believe the Product provides physical health benefits for their child when in fact, the Product is harmful for children under two both nutritionally and developmentally.

57.     Defendants intend for and know that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendants have done on the Product label.

58.     Because consumers pay a price premium for products that have a nutrient content claim, by labeling the Product as providing nutritional value, Defendants are able to both increase its sales and retain more profits.

59.     Defendants engaged in the practices complained of herein to further its private interests of: (i) increasing sales of their Product while decreasing the sales of competitors' products that do not make unlawful nutrient content claims, and/or (ii) commanding a higher price for the Product because consumers will pay more for them due to consumers' demand for healthful products for their children.

60.     The market for toddler food and drink products continues to grow, and because Defendants know consumers rely on the nutrient content claims on the Product labels, Defendants have an incentive to continue to make such misleading and unlawful representations.

61.     Defendants continue to launch new product lines with nutrient content claims to maintain their competitive edge, making it likely that Defendants will continue to misleadingly advertise their Product.

**Plaintiff's Experience**

62.     Plaintiff is a California citizen residing in Shingle Springs, California.

63.     In or around July 2021, and for about five (5) to six (6) months thereafter, Plaintiff purchased the Product for her child when he was one (1) year old

64.     Plaintiff purchased the Product consistently during that time period, approximately two (2) to three (3) cases of the Product per month. One case includes six individual Products.

65.     Plaintiff made these purchases from Target, Walmart, and/or WinCo Foods locations in or around Shingle Springs, California.

66.     Plaintiff viewed both the advertising for the Product and the Product's packaging prior to purchasing the Product for the first time. Plaintiff purchased the Product in reliance on the representations on the packaging that the Product provides physical health benefits for children under two years of age.

67.     As a result of Defendants' unlawful and misleading nutrient content claims, the Product has no, or at a minimum, much lower value to Plaintiff .

68.     Plaintiff not only purchased the Product because the label contained nutrient content claims, but she also paid more money for the Product than she would have paid for it if it did not contain nutrient content claims.

69.     Had Defendant not unlawfully and misleadingly labeled the Product, Plaintiff would not have purchased it or, at minimum, would have paid less for the Product.

70.     Plaintiff regularly shops at stores and online retailers where the Product and other baby food products are sold.

## CLASS ACTION ALLEGATIONS

71.    Plaintiff brings this lawsuit as a class action on behalf of herself and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

72.    The Class and Sub-Classes are defined as:

> **Class**:   All persons in the State of California who purchased the Product between 2021 and the present.

> **CLRA Sub-Class**:  All members of the Class who are "consumers" within the meaning of California Civil Code § 1761(d).

73.    Excluded from the Class and Sub-Classes are:  (1) Defendants, any entity or division in which Defendants has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) any Judge sitting in the presiding state and/or federal court system who may hear an appeal of any judgment entered; and (4) those persons who have suffered personal injuries as a result of the facts alleged herein. Plaintiff reserves the right to amend the Class and Sub-Class definitions if discovery and further investigation reveal that the Class and Sub-Classes should be expanded or otherwise modified.

74.    Numerosity:   Although the exact number of Class Members is uncertain, and can only be ascertained through appropriate discovery, the number is significant enough such that joinder is impracticable. The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court. The Class Members are readily identifiable from information and records in Defendants' possession, custody, or control.

75.    Typicality: Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, purchased the Product designed,

manufactured, and distributed by Defendants. The representative Plaintiff, like all Class Members, has been damaged by Defendants' misconduct in that she has incurred the cost of purchasing the Product. Furthermore, the factual bases of Defendants' misconduct are common to all Class Members and represent a common thread resulting in injury to the Class.

76.  <u>Commonality</u>:   There are numerous questions of law and fact common to Plaintiff and the Class that predominate over any question affecting Class Members individually. These common legal and factual issues include the following:

> (a)  Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Product is deceptive and/or unlawful;
>
> (b)  Whether Defendants' actions violate Federal and California laws invoked herein;
>
> (c)  Whether labeling the Product with unlawful nutrient content claims causes the Product to command a price premium in the market as compared with similar products that do not make such unlawful claims;
>
> (d)  Whether Defendants' advertising and marketing regarding the Product was likely to deceive reasonable consumers;
>
> (e)  Whether representations regarding the nutrient content of the Product is material to a reasonable consumer;
>
> (f)  Whether Defendants' engaged in the behavior knowingly, recklessly, or negligently;
>
> (g)  The amount of profits and revenues earned by Defendants as a result of the conduct;
>
> (h)  Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and

amount) of such relief; and

    (i)    Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

77.    <u>Adequate Representation</u>:  Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff has retained attorneys experienced in the prosecution of class actions, and Plaintiff intends to vigorously prosecute this action.

78.    <u>Predominance and Superiority</u>:  Plaintiff and Class Members have all suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy. Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendants' misconduct. Absent a class action, Class Members will continue to incur damages, and Defendants' misconduct will continue unabated without remedy or relief. Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that it will conserve the resources of the courts and the litigants and promote consistency and efficiency of adjudication.

## **FIRST CAUSE OF ACTION**

**Violation of California's Consumer Legal Remedies Act ("CLRA"),**

**Cal Civ. Code § 1750, *et seq.***

**(On behalf of the CLRA Sub-Class)**

79.    Plaintiff incorporates by reference each allegation set forth above.

80.    Plaintiff brings this cause of action individually and on behalf of the

1    members of the CLRA Sub-Class.

2        81.    Defendants are "person[s]" as defined by the CLRA. Cal. Civ. Code

3    § 1761(c).

4        82.    Plaintiff and CLRA Sub-Class Members are "consumers" within the

5    meaning of the CLRA. Cal. Civ. Code § 1761(d).

6        83.    The purchase of the Product by Plaintiff and the CLRA Sub-Class

7    Members constitute "transactions" as defined by the CLRA. Cal. Civ. Code

8    § 1761(e).

9        84.    The Product constitutes "goods" or "services" as defined by the

10   CLRA. Cal. Civ. Code § 1761(a) and (b).

11       85.    Plaintiff and the CLRA Sub-Class Members purchased the Product

12   primarily for personal, family, and household purposes as meant by the CLRA.

13   Cal. Civ. Code § 1761(d).

14       86.    Defendants' representations, active concealments, omissions, and

15   failures to disclose regarding the Product violated the CLRA in the following

16   ways:

17       87.    Defendants' acts and practices, set forth in this Class Action

18   Complaint, led Plaintiff and other similarly situated consumers to falsely believe

19   that the Product provides physical health benefits for their child when in fact, the

20   Product is harmful for children under two both nutritionally and developmentally.

21   By engaging in the actions, representations and conduct set forth in this Class

22   Action Complaint, Defendants have violated, and continue to violate, §

23   1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(8) of the CLRA.

24       88.    In violation of California Civil Code §1770(a)(2), Defendants'

25   acts and practices constitute improper representations regarding the source,

26   sponsorship, approval, or certification of the goods they sold.

27       89.    In violation of California Civil Code §1770(a)(5), Defendants'

28   acts and practices constitute improper representations that the goods they

1  sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or
2  quantities, which they do not have.

3      90.   In violation of California Civil Code §1770(a)(7), Defendants'
4  acts and practices constitute improper representations that the goods it sells
5  are of a particular standard, quality, or grade, when they are of another.

6      91.   In violation of California Civil Code §1770(a)(8), Defendants have
7  disparaged the goods, services, or business of another by false or misleading
8  representation of fact.

9      92.   Plaintiff and the CLRA Sub-Class Members seek an order enjoining
10 Defendants' unfair or deceptive acts or practices and equitable relief under Cal.
11 Civ. Code § 1780(e), and any other just and proper relief available under the
12 CLRA.

13     93.   Plaintiff provided Defendants with notice of their violations of the
14 CLRA pursuant to California Civil Code § 1782(a), via letter dated July 3, 2024.
15 Defendants failed to provide appropriate relief for their violations of the CLRA.
16 Accordingly, California Plaintiff now seeks monetary, compensatory, and punitive
17 damages, in addition to the injunctive and equitable relief that she seeks on behalf
18 of herself and the CLRA Sub-Class.

19                    **SECOND CAUSE OF ACTION**
20           **Violation of California's Unfair Competition Law,**
21             **Cal. Bus. & Prof. Code § 17200, *et seq.***
22                    **(On behalf of the Class)**

23     94.   Plaintiff incorporates by reference each allegation set forth above.

24     95.   Plaintiff brings this cause of action individually and on behalf of
25 Class Members.

26     96.   California Business & Professions Code § 17200 prohibits "unfair
27 competition" including any "unlawful, unfair, or fraudulent business practice" and
28 "unfair, deceptive, untrue or misleading advertising." Defendants engaged in

1  conduct that violated each of this statute's three prongs.

2      97.    Defendants have engaged, and continue to engage, in unfair practices

3  as described herein, in violation of the Unfair Competition Law, California

4  Business & Professions Code §§ 17200 *et seq.* (the "UCL"), by, without limitation,

5  including unlawful nutrient content claims on the Product's labels and thereby

6  selling Products that were not capable of being sold or held legally and which

7  were legally worthless.

8      98.    Defendants have engaged, and continue to engage, in unlawful

9  practices  as described herein, in violation of the UCL, by, without limitation,

10  violating the following laws: (i) the CLRA as described herein; (ii) the FAL as

11  described herein; (iii) the advertising provisions of the Sherman Law (Article 3),

12  including without limitation, California Health & Safety Code §§ 110390,

13  110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman

14  Law (Article 6), including without limitation, California Health & Safety Code

15  §§ 110665, 110760, 110765, and 110770; and (v) and federal laws regulating the

16  advertising and branding of food in 21 U.S.C. § 343, *et seq.* and FDA regulations,

17  including but not limited to 21 C.F.R. §§ 101.13(b), 101.13(c), 101.54(e), and

18  104.20, which are incorporated into the Sherman Law (California Health &

19  Safety Code §§ 110100(a), 110380, and 110505).

20      99.    Defendants have engaged, and continue to engage, in fraudulent

21  practices  as described herein, in violation of the UCL, by, without limitation,

22  including unlawful nutrient claims on the Product labels and thereby

23  selling Products that were not capable of being sold or held legally and which were

24  legally worthless.

25      100.   Plaintiff and those similarly situated relied to their detriment on

26  Defendants' unlawful, unfair, and fraudulent business practices. Had Plaintiff

27  and those similarly situated been adequately informed and not deceived by

28  Defendants, they would have acted differently by, without limitation: (i) declining

1   to purchase the Product, (ii) purchasing less of the Product, or (iii) paying less for
2   the Product.

3       101.   Defendants' acts and omissions are likely to deceive the general
4   public.

5       102.   Defendants engaged in these deceptive and unlawful practices to
6   increase their profits. Accordingly, Defendants have engaged in unlawful trade
7   practices, as defined and prohibited by section 17200, *et seq.* of the California
8   Business and Professions Code.

9       103.   The aforementioned practices, which Defendants have used to
10   their significant financial gain, also constitute unlawful competition and provide
11   an unlawful advantage over Defendants' competitors as well as injury to the
12   general public.

13       104.   As a direct and proximate result of such actions, Plaintiff and the
14   other Class members, have suffered and continue to suffer injury in fact and
15   have lost money and/or property as a result of such deceptive and/or unlawful
16   trade practices and unfair competition in an amount which will be proven at trial,
17   but which is in excess of the jurisdictional minimum of this Court. In particular,
18   Plaintiff and those similarly situated paid a price premium for the Product, i.e.,
19   the difference between the price consumers paid for the Product and the price
20   that they would have paid but for Defendants' misrepresentation. This
21   premium can be determined by using econometric or statistical techniques such
22   as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those
23   similarly situated will seek a full refund of the price paid upon proof that the sale
24   of the Product was unlawful.

25       105.   As a direct and proximate result of such actions, Defendants have
26   enjoyed, and continue to enjoy, significant financial gain in an amount which
27   will be proven at trial, but which is in excess of the jurisdictional minimum of
28   this Court.

106.   Plaintiff seeks, on behalf of herself and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendants as result of Defendants' conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the Sherman Law (Articles 3 and 6) and the Federal laws and regulations referenced herein do not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

107.   Plaintiff also seeks equitable relief, including restitution, with respect to her UCL unlawfulness claims for violations of the CLRA, FAL and her UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiff makes the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendants' misleading representations as described in this Complaint, but the UCL does not require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class).

108.  Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

109.  Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

## **THIRD CAUSE OF ACTION**

### **False Advertising, Bus. and Prof. Code § 17500,** *et seq.*

### **(On behalf of the Class)**

110.  Plaintiff incorporates by reference each allegation set forth above.

111.  Plaintiff brings this cause of action individually and on behalf of Class Members.

112.  Beginning at an exact date unknown to Plaintiff, but within three (3) years preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Product.

113.  Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that the Product that they

were purchasing were physically beneficial for their young children.

114. Plaintiff and those similarly situated relied to their detriment on Defendants' misleading and deceptive advertising and marketing practices, including each of the unlawful claims set forth above. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, refraining from purchasing the Product or paying less for it.

115. Defendants' acts and omissions are likely to deceive reasonable consumers and the general public.

116. Defendants engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendants have engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

117. The aforementioned practices, which Defendants used, and continue to use, to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

118. As a direct and proximate result of such actions, Plaintiff and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff, and those similarly situated, paid a price premium for the Product, i.e., the difference between the price consumers paid for the Product and the price that they would have paid but for Defendants' false, deceptive and misleading advertising.

119. Plaintiff seeks equitable relief, including restitution, with respect to their FAL claims.

120.   Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described practices constitute false, misleading and deceptive advertising.

121.   Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising and marketing practices complained of herein. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which they are not entitled. Plaintiff, those similarly situated and/or other California consumers have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

### FOURTH CAUSE OF ACTION

**Common Law Fraud, Deceit, and/or Misrepresentation**

**(On behalf of the Class)**

122.   Plaintiff incorporates by reference each allegation set forth above.

123.   Plaintiff brings this cause of action individually and on behalf of Class Members.

124.   Defendants have fraudulently and deceptively included unlawful nutrient content claims on the Product labels.

125.   The unlawfulness of the claims was known exclusively to, and actively concealed by, Defendants, not reasonably known to Plaintiff, and material at the time they were made. Defendants' unlawful statements concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to

purchase the Product. In misleading Plaintiff and not so informing her, Defendants breached their duty to Plaintiff. Defendants also gained financially from, and as a result of, their breach.

126.   Plaintiff and those similarly situated relied to their detriment on Defendants' unlawful representations. Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation: (i) declining to purchase the Product, (ii) purchasing less of them, or (iii) paying less for the Product.

127.   By and through such fraud, deceit, and unlawful representations, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendants fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Product.

128.   Plaintiff and those similarly situated justifiably and reasonably relied on   Defendants' unlawful representations, and, accordingly, were damaged by Defendants.

129.   As a direct and proximate result of Defendants' unlawful representations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Product.

130.   Defendants' conduct as described herein was willful and malicious and  was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

## FIFTH CAUSE OF ACTION

### For Unjust Enrichment

### (On Behalf of the Class)

131.   Plaintiff incorporates by reference each allegation set forth above.

132.   Plaintiff brings this cause of action on behalf of herself and the Class.

133.   Defendants have received and retained a benefit from Plaintiff and

1 Class Members, and inequity has resulted.

2   134. Defendants have been unjustly enriched in retaining the revenues

3 from Plaintiff's and Class Members' purchases of the Product, which retention

4 is unjust and inequitable, because Defendants sold Products that were not capable

5 of being sold or held legally and which were legally worthless. Plaintiff paid a

6 premium price for the Product.

7   135. Because Defendants' retention of the non-gratuitous benefit

8 conferred on them by Plaintiff and Class members is unjust and inequitable,

9 Defendants must pay restitution and non-restitutionary disgorgement of profits

10 to Plaintiff and the Class members for its unjust enrichment, as ordered by the

11 Court. Plaintiff and those similarly situated have no adequate remedy at law to

12 obtain this restitution.

13   136. Plaintiff, therefore, seeks an order requiring Defendants to pay non-

14 restitutionary disgorgement of profits and make restitution to her and other

15 members of the Class.

16        **<u>SIXTH CAUSE OF ACTION</u>**

17 **Violation of California's False Advertising Law, Bus. & Prof. Code § 17501**

18         **(On Behalf of the Class)**

19   137. Plaintiff incorporates by reference each allegation set forth above.

20   138. Plaintiff brings this cause of action on behalf of herself and the Class.

21   139. Plaintiff brings this cause of action for restitution pursuant to Section

22 17535 of the Business and Professions Code. Pursuant to Rule 8(a)(3) of the

23 Federal Rules of Civil Procedure, Plaintiff seeks restitution in the alternative to

24 the damages they seek in their first through fifth causes of action. Plaintiff is

25 entitled to restitution because she lacks an adequate remedy at law; the legal

26 remedies available to her are not as equally prompt and certain, and in other ways

27 efficient.

28   140. Defendants violated Section 17501 of the Business and Professions

Code by through their misleading and deceptive advertising and marketing practices.

141.     Defendants made representations and statements (by omission and commission) that led reasonable customers to believe that the Product that they were purchasing was physically beneficial for their young children.

142.     Defendants violated Section 17501 with actual or constructive knowledge that their advertisements were untrue or misleading.

143.     Defendants violated Section 17501 in order to induce Plaintiff and the class members to purchase the Product based on the false impression that they are physically beneficial for their young children.

144.     Plaintiff and the class members reasonably relied on Defendants' representations and/or omissions made in violation of Section 17501, and were thereby induced to pay more for Defendants' Product and make purchases they would not have otherwise made.

145.     As a direct and proximate result of Defendants' violations of Section 17501, Defendants have improperly acquired money from Plaintiff and the class members. As such, Plaintiff requests this Court order Defendants to restore this money to them and all class members.

## RELIEF REQUESTED

146.  Plaintiff, on behalf of herself and all others similarly situated, requests the Court enter judgment against Defendants, as follows:

(a)     An order certifying the proposed Class and Sub-Class, designating Plaintiff as named representative of the Class, and designating the undersigned as Class Counsel;

(b)     An order temporarily and permanently enjoining Defendants from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

(c)     An award to Plaintiff and the Class for compensatory,

exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(d) Any and all remedies provided pursuant to the causes of action and statutes alleged herein;

(e) A declaration that Defendants must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of the Product or make full restitution to Plaintiff and Class Members;

(f) An award of attorneys' fees and costs, as allowed by law;

(g) An award of pre-judgment and post-judgment interest, as provided by law;

(h) Leave to amend the Complaint to conform to the evidence produced at trial; and

(i) Such other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

147. Pursuant to Federal Rule of Civil Procedure 38(b) and Eastern District of California Local Rule 201, Plaintiff hereby demands a trial by jury of all issues in this action so triable.

Dated: September 5, 2024                    Respectfully submitted,

Capstone Law APC


By: /s/ Laura E. Goolsby
Tarek H. Zohdy
Cody R. Padgett
Laura E. Goolsby
Nathan N. Kiyam

Attorneys for Plaintiff

CLASS ACTION COMPLAINT