1

2

3

4

5

6

7

8

9

10                              UNITED STATES DISTRICT COURT

11                              EASTERN DISTRICT OF CALIFORNIA

12

13

14    ALANA GUTIERREZ,                              No. 2:24-cv-02427-TLN-SCR

15                    Plaintiff,

16          v.                                       **ORDER**

17    ABBOTT LABORATORIES,

18                    Defendant.

19

20          This matter is before the Court on Defendant Abbott Laboratories' ("Defendant") Motion

21    to Dismiss.  (ECF No. 18.)  Plaintiff Alana Gutierrez ("Plaintiff") filed an opposition.  (ECF No.

22    19.)  Defendant filed a reply.  (ECF No. 21.)  For the reasons set forth below, Defendant's motion

23    is GRANTED in part and DENIED in part.

24    ///

25    ///

26    ///

27    ///

28

1 | ///

2 | ///

1  **I.      FACTUAL AND PROCEDURAL BACKGROUND**[1]

2        The instant putative class action arises from Defendant's allegedly deceptive and unlawful

3  practices in labeling and marketing Go & Grow 360 Total Care by Similac Toddler Drink ("Go &

4  Grow" or the "Product").  (ECF No. 1.)  Defendant manufactures, distributes, markets, advertises,

5  and sells toddler drink products under the brand name Go & Grow.  (*Id.* at 3.)  These products

6  have packaging that predominantly, uniformly, and consistently make nutrient content claims on

7  the principal display panel of the product labels.  (*Id.*)  The Product is intended for children under

8  the age of two and is labeled with the intended age on the front label, "12-36 MONTHS."  (*Id.* at

9  3–4.)

10        Plaintiff alleges Defendant misbrands the Product by making nutrient content claims on

11  packages that are strictly prohibited by the U.S. Food and Drug Administration ("FDA").  (*Id.* at

12  2.)  Plaintiff further alleges the nutrient content claims on the Product mislead purchasers into

13  believing it provides physical health benefits for children under two years of age in order to

14  induce parents into purchasing it, but the Product is harmful both nutritionally and

15  developmentally for children under two.  (*Id.*)

16        According to Plaintiff, the Product is unlawful, misbranded, and violates the Sherman

17  Law, California Health & Safety Code § 110660, et seq., because the Product is intended for

18  children less than two years of age and the Product's label contains nutrient content claims.  (*Id.*

19  at 7.)  Plaintiff alleges the Product at issue in this case is intended for children one year and up as

20  evidenced on the front label and in the Product title.  (*Id.* at 7–8.)  Plaintiff alleges the Product is

21  also sold in the "baby food" grocery store aisles, alongside infant formulas.  (*Id.* at 8.)  Plaintiff

22  alleges, on information and belief, Defendant directs retailers to sell the Product in the baby food

23  aisle.  (*Id.*)  Plaintiff further alleges Defendant misbrands the Product by making nutrient content

24  claims that are strictly prohibited by the FDA, and by misleading purchasers into believing that its

25  Product provides physical health benefits in order to induce parents into purchasing the Product.

26  (*Id.*)

27  ─────────────────────

28  [1]      The following factual background is taken largely verbatim from Plaintiff's Complaint.
(ECF No. 1.)

1    The Product's front and back labels contain nutrient content claims that are allegedly

2    unlawful.  (*Id.*)  The Product prominently states nutrient content claims on the front label such as

3    "✓ IMMUNE SUPPORT;" "✓ BRAIN DEVELOPMENT;" "✓ DIGESTIVE HEALTH;" "DHA,

4    LUTEIN, VITAMIN E;" and "5 HMO PREBIOTICS."  (*Id.*)  Further, the Product's back label

5    states: "2 servings have: 28 IMPORTANT NUTRIENTS for GROWTH and DEVELOPMENT;"

6    and "At least 40% of the Daily Value: Iron • Calcium • Vitamins C, D & E."  (*Id.*)  The terms

7    "IMMUNE SUPPORT, BRAIN DEVELOPMENT, and DIGESTIVE HEALTH" in conjunction

8    with prominent images of checkmarks; "5 HMO PREBIOTICS;" "28 IMPORTANT

9    NUTRIENTS for GROWTH and DEVELOPMENT" are each implied nutrient content claims.

10   (*Id.*)  Plaintiff alleges the statement "At least 40% of the Daily Value: Iron • Calcium • Vitamins

11   C, D & E" is an express nutrient content claim, or, in the alternative, it is an implied nutrient

12   claim.  (*Id.*)

13        Exhibit 2 to Plaintiff's Complaint contains pictures of the labels for the Product:

 



(ECF No. 1-2 at 3–4.)

Plaintiff alleges foods intended for children less than two are prohibited from making such nutrient content claims and such claims are also separately misleading.  (ECF No. 1 at 8–9 (citing 21 C.F.R. § 101.13(b)(3)).)  Plaintiff further alleges reasonable consumers rely on the label claims to decide to purchase the Product for children under two years old.  (*Id.* at 9.)  These consumers shopping in the baby food aisle of a grocery store or online see the Product alongside products intended for children as young as six months and purchase the Product for their toddler under the age of two.  (*Id.*)

In or around July 2021, Plaintiff purchased the Product for her child when he was one year old.  (*Id.* at 15.)  Plaintiff purchased the Product consistently for about five to six months thereafter, approximately two to three cases of the Product per month (one case includes six

1    individual Products).  (*Id.*)  Plaintiff purchased the Product from Target, Walmart, and/or WinCo

2    Foods locations in Shingle Springs, California.  (*Id.*)  Plaintiff viewed both the advertising for the

3    Product and the Product's packaging prior to purchasing it for the first time, and she alleges she

4    purchased it in reliance on the representations on the packaging that the Product provides physical

5    health benefits for children under two years of age.  (*Id.*)  Plaintiff alleges that because of

6    Defendant's unlawful and misleading nutrient content claims, the Product has no or, at a

7    minimum, much lower value to Plaintiff.  (*Id.*)  Plaintiff alleges she not only purchased the

8    Product because the label contained nutrient content claims, but she also paid more money for the

9    Product than she would have paid if it did not contain those claims.  (*Id.*)

10       Plaintiff filed the instant putative class action in this Court on September 5, 2024.  (ECF

11   No. 1.)  Plaintiff's Complaint alleges the following claims: (1) violation of the California

12   Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq.; (2) violation of the

13   California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, et seq.; (3) false

14   advertising in violation of Cal. Bus. & Prof. Code § 17500, et seq.; (4) common law fraud, deceit,

15   and/or misrepresentation; (5) unjust enrichment; and (6) violation of the California False

16   Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17501.[2]  (*Id.*)  Defendant filed the instant

17   motion to dismiss on November 8, 2024.  (ECF No. 18.)

18       **II.     STANDARD OF LAW**

19       A motion to dismiss for failure to state a claim upon which relief can be granted under

20   Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

21   *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

22   "a short and plain statement of the claim showing that the pleader is entitled to relief."  *See*

23   *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).  Under notice pleading in federal court, the

24   complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon

25   which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted).

26

27   [2]     Plaintiff styles the sixth claim on the first page of her Complaint as "(6) injunctive relief."
     (ECF No. 1 at 1.)  However, the body of the Complaint refers to this claim as a violation of the
28   FAL.  (*Id.* at 28–29.)  Accordingly, the Court refers to it as the FAL claim here.

"This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570.

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

1    In ruling on a motion to dismiss, a court may only consider the complaint, any exhibits

2    thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

3    *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v.*

4    *Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

5    If a complaint fails to state a plausible claim, "'[a] district court should grant leave to

6    amend even if no request to amend the pleading was made, unless it determines that the pleading

7    could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122,

8    1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

9    **III.    ANALYSIS**

10    Defendant moves to dismiss Plaintiff's UCL claim under the "unlawful" prong, her fraud

11    claim, her UCL claim under the "unfair" prong, her unjust enrichment claim, and her injunctive

12    relief claim.  (ECF No. 18-1 at 10–22.)  The Court will address each of these arguments in turn.

13    **A.    UCL "Unlawful" Claim**

14    Plaintiff alleges federal regulations provide that, subject to several exceptions, "no

15    nutrient content claims may be made on food intended specifically for use by infants and children

16    less than [two] years of age."  (ECF No. 1 at 4 (citing 21 C.F.R. § 101.13(b)(3)).)  Plaintiff

17    alleges the Sherman Food, Drug, and Cosmetic Act ("Sherman Law"), California Health & Safety

18    Code § 110660, incorporates this regulation.  (*Id.* at 7, 21.)  Plaintiff alleges the statements on the

19    Product's label constitute an impermissible nutrient content claim under federal regulations,

20    which makes it an impermissible nutrient content claim under state law, violating the UCL's

21    "unlawful" prong.  (*Id.* at 21.)

22    Defendant separates the individual statements from the Product's label into five different

23    statements ((1) "✓ IMMUNE SUPPORT," "✓ BRAIN DEVELOPMENT," and "✓ DIGESTIVE

24    HEALTH," (2) "DHA, LUTEIN, VITAMIN E," (3) "5 HMO PREBIOTICS," (4) "2 servings

25    have: 28 Important Nutrients for Growth and Development," (5) "At least 40% of the Daily

26    Value: Iron • Calcium • Vitamins C, D & E), and contend that none of them are implied nutrient

27    content claims.  (ECF No. 18-1 at 11–14.)  The Court will consider Defendant's arguments about

28    the first, second, and fourth statements together, then consider its arguments about the third

8

1    statement, and finally consider its arguments about the fifth statement.

2                    *i.*          *First, Second, and Fourth Statements*

3         Defendant argues the first, second, and fourth statements are conclusory and therefore

4    Plaintiff's argument that the statement is an implied nutrient content claim fails.  (*Id.* (citing

5    *Clemmons v. Upfield US Inc.*, 667 F. Supp. 3d 5, 14 (S.D.N.Y. 2023); *Red v. Kraft Foods, Inc.*,

6    754 F. Supp. 2d 1137, 1142 (C.D. Cal. 2010)).)  In opposition, Plaintiff maintains its UCL

7    unlawful claims are well pleaded, as the Complaint sets forth the specific statements involved,

8    explains why they constitute implied and/or express nutrient content claims, and explains why the

9    labels are false, misleading, and capable of deceiving or confusing the general public.  (ECF No.

10   19 at 16 (citing ECF No. 1 ¶¶ 17, 37–39, 42–61).)  Plaintiff maintains Defendant designs its label

11   to be read as a whole, courts analyze labels the same way, and the FDA similarly "recognizes

12   statements can be implied nutrient content claims where the term is used in a nutritional context if

13   it appears in association with an explicit or implicit claim or statement about a nutrient."  (*Id.* at

14   17 (citing *LeGrand v. Abbott Labs.*, 655 F. Supp. 3d 871, 899 (N.D. Cal. 2023)).)

15        California's UCL prohibits unfair competition, including unlawful, unfair, and fraudulent

16   business acts.  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003) (citing

17   Cal. Bus. & Prof. Code § 17200(2)(a)).  "To state a claim under the unlawful prong of the UCL, a

18   plaintiff must plead: (1) a predicate violation[;] and (2) an accompanying economic injury caused

19   by the violation."  *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 921 (E.D. Cal.

20   2020) (quoting *Shelton v. Ocwen Loan Servicing*, No. 18-CV-02467-AJB-WVG, 2019 WL

21   4747669, at *10 (S.D. Cal. Sept. 30, 2019)).  "By proscribing any unlawful business practice, the

22   UCL borrows violations of other laws and treats them as unlawful practices that the unfair

23   competition law makes independently actionable."  *Id.* (citing *Alvarez v. Chevron Corp.*, 656 F.3d

24   925, 933 n.8 (9th Cir. 2011)).

25        The Sherman Law, California Health & Safety Code §§ 109875, et seq., explicitly adopts

26   all federal food and nutrition labeling requirements as its own: "All food labeling regulations and

27   any amendments to those regulations adopted pursuant to the federal act, in effect on January 1,

28   1993, or adopted on or after that date shall be the food labeling regulations of this state."  Cal.

1    Health & Saf. Code § 110100.  Therefore, the federal regulations governing nutrient content

2    claims articulated in 21 C.F.R. § 101.13 are the regulations governing nutrient content claims in

3    California.  Federal regulations provide that nutrient content claims "may not be made on the

4    label or in the labeling of foods unless the claim is made in accordance with this regulation" and

5    other specified regulations.  21 C.F.R. § 101.13(b).  The regulations define an "expressed nutrient

6    content claim" as "any direct statement about the level (or range) of a nutrient in the food, e.g.,

7    "low sodium" or "contains 100 calories."  *Id.* § 101.13(b)(1).  The regulations define an "implied

8    nutrient content claim" as any claim that:

9    
10    > (i) Describes the food or ingredient therein in a manner that suggests the nutrient is absent or present in a certain amount (e.g., "high in oat bran"); or

11    
12    > (ii) Suggests that a food, because of its nutrient content, may be useful in maintaining healthy dietary practices, where there is also implied or explicit information about the nutrient content of the food (e.g., "healthy").

13    

14    *Id.* § 101.13(b)(2).  Further, "no nutrient content claims may be made on food intended

15    specifically for use by infants and children less than 2 years of age," with certain exceptions.  *Id.*

16    § 101.13(b)(3).

17        The Court finds persuasive Plaintiff's citation to *LeGrand v. Abbott Laboratories*, 655 F.

18    Supp. 3d 871, 889 (N.D. Cal. 2023), for the assertion that "packaging statements may be viewed

19    in conjunction with nearby nutritional statements."  (ECF No. 19 at 17.)  As Plaintiff notes, in

20    *LeGrand*, the court found the phrase "All-in-one blend to support your health" was an implied

21    nutrient content claim where it was followed by phrases "HMB * Protein * Vitamin D * Omega-3

22    ALA."  655 F. Supp. 3d at 899.  The court also noted "the FDA guidance is not so exacting" as to

23    require a nutrient content claim to "state or imply that a nutrient is present in a certain amount."

24    *Id.* (internal quotation marks omitted) (citing *Guidance for Industry A Labeling Guide for*

25    *Restaurants and Other Retail Establishments Selling Away-from-home Foods* (*FDA Guidance for*

26    *Industry*), 2008 WL 2155726, at *10 ("FDA may consider the term to be used in a nutritional

27    context if it appears in association with an explicit or implicit claim or statement about a

28    nutrient.")).

1    Like *LeGrand*, the Court ultimately finds the reasonable inference from Plaintiff's

2    allegations is that the challenged statements read together comprise a nutrient content claim.  The

3    Court disagrees with Defendant's assertion that the challenged statements here are like the many

4    statements in *LeGrand*.  There, the court found the statements did not constitute implied nutrient

5    content claims because they were "not placed in close enough proximity to the underlying

6    nutrient claims to be themselves considered nutrient content."  (ECF No. 21 at 7 (citing *Le Grand*,

7    655 F. Supp. 3d at 888).)

8        Here, the Court finds the first, second, and fourth statements are close enough in

9    proximity to constitute implied nutrient content claims when read in connection with the fifth

10   statement.  The fifth statement, which reads "At least 40% of the Daily Value: Iron • Calcium •

11   Vitamins C, D & E," describes nutrients (iron, calcium, and vitamins C, D, and E) that are

12   "present in a certain amount."  21 C.F.R. § 101.13(b)(2)(i).  The fourth statement, "28 Important

13   Nutrients for Growth and Development," suggests the Product "may be useful in maintaining

14   healthy dietary practices" because of the nutrient content is expressed *immediately below* in the

15   fifth statement.  21 C.F.R. § 101.13(b)(2)(ii).  Further, "VITAMIN E" expressed in the second

16   statement on the front of the label can be connected to the fifth statement of "At least 40% of the

17   Daily Value" of Vitamin E to describe that the nutrient is "present in a certain amount."  21

18   C.F.R. § 101.13(b)(2)(i).  Finally, the first statement "✓ IMMUNE SUPPORT," "✓ BRAIN

19   DEVELOPMENT," and "✓ DIGESTIVE HEALTH," read in connection with the fourth and fifth

20   statements, could plausibly suggest that Product generally "because of its nutrient content, may be

21   useful in maintaining healthy dietary practices."  21 C.F.R. § 101.13(b)(2)(ii).  Moreover, the

22   Court finds unpersuasive Defendant's citation to *LeGrand* and FDA guidance that "a claim must

23   appear in the same statement separated by a comma," "connective tissue," or "other visual

24   element" in order for a non-nutrient claim to qualify as "in association with" a nutrient claim.

25   (ECF No. 21 at 9).  The FDA guidance does not contain this assertion.  *FDA Guidance for*

26   *Industry*, 2008 WL 2155726, at *10.

27       Accordingly, the Court finds the first, second, and fourth statements collectively constitute

28   an impermissible implied nutrient content claim because they are on "food intended specifically

1   for use by infants and children less than 2 years of age," and Defendant does not argue any of the

2   exceptions apply to the label as a whole.  21 C.F.R. § 101.13(b)(3).

3                          *ii.*          *Third Statement*

4         Defendant argues the third statement is conclusory and therefore Plaintiff's argument that

5   the statement is an implied nutrient content claim fails.  (ECF No. 18-1 at 13.)  In opposition,

6   Plaintiff asserts "5 HMO PREBIOTICS," when taken in context with the other challenged

7   statements, constitutes an implied nutrient content claim.  (ECF No. 19 at 18.)  In reply,

8   Defendant maintains this statement does not qualify under either subsection defining implied

9   nutrient content claims.  (ECF No. 21 at 8.)

10        Here, the Court agrees with Defendant that "5 HMO PREBIOTICS" does not fall under

11  either subsection (i) or (ii) of 21 C.F.R. § 101.13(b)(2).  First, the statement does not describe a

12  food or ingredient "that suggests the nutrient is absent or present in a certain amount."  *Id.*

13  Second, the statement does not suggest the Product, because of its nutrient content, "may be

14  useful in maintaining health dietary practices."  *Id.*  The Court further finds persuasive

15  Defendant's argument that "to the extent Plaintiff is arguing that this statement is made in

16  association with another claim about a nutrient, Plaintiff does not identify what nutrient claim that

17  is."  (ECF No. 21 at 8.)

18        Accordingly, the Court finds the third statement does not constitute an impermissible

19  implied nutrient content claim.

20                         *iii.*          *Fifth Statement*

21        Defendant argues the fifth statement, which Plaintiff alleges is both an expressed and

22  implied nutrient content claim, is explicitly permitted by FDA regulations.  (ECF No. 18-1 at 14.)

23  Defendant notes the regulations allow for a statement "that describes the percentage of a vitamin

24  or mineral in the food, including foods intended specifically for use by infants and children less

25  than 2 years of age, in relation to a Reference Daily Intake (RDI)."  (*Id.* (quoting 21 C.F.R. §

26  101.13(q)(3)).)  In opposition, Plaintiff fails to respond to this argument and instead generally

27  contends she adequately alleges this statement constitutes an expressed or implied nutrient

28  content claim.  (*See* ECF No. 19 at 19.)  In reply, Defendant highlights that Plaintiff "wholly

1  ignores" the argument that the fifth statement is permissible.  (ECF No. 21 at 9.)

2        Federal regulations provide that "[e]xcept for claims regarding vitamins and minerals

3  described in paragraph (q)(3) of this section, no nutrient content claims may be made on food

4  intended specifically for use by infants and children less than 2 years of age[.]"  21 C.F.R. §

5  101.13(b)(3).  Paragraph (q)(3) states:

> *A* statement that describes the percentage of a vitamin or mineral in
> the food, including foods intended specifically for use by infants and
> children less than 2 years of age, in relation to a Reference Daily
> Intake (RDI) . . . may be made on the label or in labeling of a food
> without a regulation authorizing such a claim for a specific vitamin
> or mineral unless such claim is expressly prohibited by the
> regulation[.]

10  *Id.*§ 101.13(q)(3)(i).

11        Here, the Court agrees with Defendant that the fifth statement falls into the exception

12  listed in 21 C.F.R. § 101.13(q)(3)(i).  The fifth statement is permitted because it describes the

13  percentage (at least 40%) of a vitamin or mineral (iron, calcium, and vitamins C, D, and E) in

14  relation to RDI (Daily Value).  Further, Plaintiff concedes this argument in her failure to respond

15  in opposition.  *See Crandall v. Teamsters Loc. No. 150*, No. 2:23-CV-03043-KJM-CSK, 2024

16  WL 3889916, at *5 (E.D. Cal. Aug. 20, 2024) (finding plaintiff abandoned claims not raised in

17  opposition to defendants' motion to dismiss).  Accordingly, the Court finds the fifth statement is

18  explicitly permitted by the FDA regulations, and by extension, California law.[3]  *See* Cal. Health

19  & Saf. Code § 110100.

20        Accordingly, the Court finds the fifth statement is not an impermissible nutrient content

21  claim because it falls squarely under an exemption.

22        In sum, because the Court finds the first, second, and fourth statements collectively

23  constitute an impermissible implied nutrient content claim in violation of federal and California

24  regulations, the Court finds Plaintiff adequately establishes a claim under the "unlawful" prong of

25  the UCL.  Accordingly, Defendant's motion to dismiss Plaintiff's "unlawful" UCL claim is

26

_____

27  [3]      Because the Court finds the fifth statement is permitted under state and federal
   regulations, it declines to address Defendant's alternative argument regarding preemption.  (*See*
28  ECF No. 18-1 at 15 n.2.)

1    DENIED.

2              B.       Fraud Claim

3         Plaintiff alleges several claims grounded in fraud — namely, the CLRA, FAL, the

4    "fraudulent" UCL, and common law fraud claims.  (ECF No. 1 at 18–20, 23–24, 26–29.)

5    Defendant moves to dismiss these claims, arguing (1) Plaintiff has failed to plead them with

6    particularity required under Rule 9(b) and (2) Plaintiff has failed to plausibly allege any of the

7    challenged statements are misleading to reasonable consumers.  (ECF No. 18-1 at 15.)  The Court

8    will consider Defendant's arguments in turn.

9                   i.       *Whether Plaintiff Pleads Fraud Claims with Particularity Under*

10                          *Rule 9(b)*

11        Defendant argues Plaintiff has not explained what makes the challenged statements

12   misleading, as opposed to merely allegedly violating FDA regulations precluding certain nutrient

13   content claims on products intended for children under two years old.  (*Id.* at 16.)  Defendant

14   further argues Plaintiff does not explain with particularity how the Product is "harmful," as she

15   alleges.  (*Id.*)  Defendant also contends Plaintiff's fraud theory is "indistinguishable" from that in

16   *Davidson v. Sprout Foods*, 106 F.4th 842, 853 (9th Cir. 2024), which the Ninth Circuit rejected.

17   (*Id.* at 16–17.)

18        In opposition, Plaintiff asserts Rule 9(b) only requires Plaintiff to plead knowledge

19   generally (not to prove it prior to discovery).  (ECF No. 19 at 11.)  Plaintiff further asserts it is not

20   fatal to the Complaint "that it does not describe a single specific transaction" or "a specific

21   number or precise time frame."  (*Id.* at 12.)  Plaintiff notes district courts have held that time,

22   place, and content of a fraud by omission can succeed without the same level of specificity

23   required by normal fraud because requiring a plaintiff to identify the precise time, place, and

24   content of an event that did not occur would effectively gut state laws prohibiting fraud by

25   omission.  (*Id.*)  Plaintiff maintains the Complaint sufficiently pleads particularity of

26   circumstances relating to the Product, violations of FDA law of its labels, the misleading

27   statements, and reliance.  (*Id.*)  Plaintiff also contends Defendant's analogy to *Davidson* is

28   incorrect because *Davidson* focused on how the fraud theory's core component involved a

                                            14

1    showing that the messages were false *and* harmful.  (*Id.* at 15.)

2           In reply, Defendant highlights that Plaintiff does not provide an answer to its argument

3    regarding *Davidson*, 106 F.4th 842, other than a "half-hearted" attempt to distinguish the case.

4    (ECF No. 21 at 10.)  Defendant maintains that what was missing in *Davidson* were facts plausibly

5    pleading why the message was false or harmful, which is the same as what Plaintiff's Complaint

6    is missing in the instant case.  (*Id.* at 11.)

7           "[W]hile a federal court will examine state law to determine whether the elements of fraud

8    have been [pleaded] sufficiently to state a cause of action, the Rule 9(b) requirement that the

9    *circumstances* of the fraud must be stated with particularity is a federally imposed rule."  *Vess v.*

10    *Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (9th Cir. 2003) (emphasis in original).  Even "where

11    fraud is not a necessary element of a claim," a plaintiff may allege and rely entirely on "a unified

12    course of fraudulent conduct" as the basis of a claim.  *Id.*  In such cases, those claims are

13    "grounded in fraud" and must be pleaded to satisfy the particularity requirement of Rule 9(b).  *Id.*

14    Courts have held CLRA, FAL, and UCL claims are grounded in fraud and Rule 9(b) is applicable

15    to false representation allegations in this context.  *Weiss v. Trader Joe's Co.*, No. 8:18-cv-01130-

16    JLS-GJS, 2018 WL 6340758, at *7 (C.D. Cal. Nov. 20, 2018) (citing *Kearns v. Ford Motor Co.*,

17    567 F.3d 1120, 1125 (9th Cir. 2009); *Brazil v. Dole Food Co.*, 935 F. Supp. 2d 947, 963–64

18    (N.D. Cal. 2013)), *aff'd sub nom.*, 838 F. App'x 302 (9th Cir. 2021).  To comply with Rule 9(b),

19    a plaintiff "must allege the who, what, when, where, and how of the misconduct charged."  *Id.*

20    (internal quotations and citation omitted).  A plaintiff must also "allege with specificity what

21    products they purchased, on what statements they relied in making those purchases, and why

22    those statements were false or misleading."  *Haley v. Macy's, Inc.*, 263 F. Supp. 3d 819, 824

23    (N.D. Cal. 2017).

24           Here, the Court finds Plaintiff's CLRA, FAL, UCL, and common law fraud claims are

25    "grounded in fraud" and therefore Plaintiff's Complaint needs to satisfy Rule 9(b)'s heightened

26    pleading standards.  Defendant does not seem to dispute the who, what, when, or where of the

27    alleged misconduct, but rather simply the "how" of the alleged misconduct — namely, "how" the

28    Product labeling is allegedly misleading and how the Product is allegedly "harmful."  (ECF No.

1    18-1 at 16.)

2              Plaintiff alleges: "[T]he nutrient content claims on the Product misleads purchasers into

3    believing that the products provide physical health benefits for children under two years of age in

4    order to induce parents into purchasing Defendants' products.  In fact, the Product is harmful both

5    nutritionally and developmentally for children under two."  (ECF No. 1 at 2.)  Throughout the

6    Complaint, Plaintiff largely repeats the same allegations.  (*See id.*)  Somewhat more specifically,

7    Plaintiff alleges the nutrient content claims on the Product's front labels "mislead[s] consumers

8    into believing that foods for children under two should be purchased based on the quantities of

9    the listed nutrients, when other considerations are just as, or more, important."  (*Id.* at 12.)

10   Plaintiff further alleges "[t]he Guidelines also recommend that children 'younger than age 2'

11   completely '[a]void foods and beverages with added sugars" and the Product "has 4 grams of

12   added sugars."  (*Id.*)  According to Plaintiff, "[d]ietary needs for children under two are also

13   different from those of adults because the optimal diet for children under two also has to address

14   needs beyond mere nutrition, such as developing neural pathways in the brain to establish healthy

15   eating habits and developing gross and fine motor skills."  (*Id.*)  Plaintiff finally alleges that "[a]s

16   a result of Defendant['s] unlawful and misleading nutrient content claims, the Product has no, or

17   at a minimum, much lower value to Plaintiff."  (*Id.* at 15.)  The Court finds these allegations are

18   sufficient to meet Rule 9(b)'s heightened pleading standards.  Plaintiff's allegations explain how

19   or why the alleged nutrient content claims are misleading or harmful.  *Haley*, 263 F. Supp. 3d at

20   824.

21              The Court further finds Defendant's citation to *Davidson* to be unpersuasive.  In

22   *Davidson*, plaintiffs alleged Sprout's baby food pouches were harmful because (1) "the products

23   'contain high amounts of free sugars' accompanied by a list of the grams of sugar in some of the

24   products" and (2) "pouch-based foods in general may be unhealthy for children, nutritionally and

25   developmentally."  106 F.4th at 853.  The Ninth Circuit agreed the district court correctly

26   identified the deficiencies in these allegations.  *Id.*  The court noted the allegations about sugar

27   lack context because plaintiffs did not "explain at what level sugars become harmful or why the

28   levels of sugar in these products, in particular, could cause harm."  *Id.*  The court noted the

16

1   allegations about "pouch-based foods" and allegations of harm relied "on hypotheticals and

2   contingencies outside the scope of this case." *Id.*  The court finally noted that "plaintiffs never

3   actually alleged that Sprout's products cause any of these harms." *Id.*  Unlike plaintiffs in

4   *Davidson*, here, Plaintiff explicitly alleges the Dietary Guidelines recommend that children

5   younger than age two should completely avoid foods and beverages with *any* added sugar.  (ECF

6   No. 1 at 12.)  Plaintiff further explains in the Complaint that "the period of 0-24 months 'is key

7   for establishing healthy dietary patterns that may influence the trajectory of eating behaviors and

8   health throughout the life course . . . Children in this age group consume small quantities of food,

9   so it's important to make every bite count!'  (*Id.*)

10          The Court therefore finds that Plaintiff pleads her fraud claims with the level of

11   particularity required by Rule 9(b).  Accordingly, Defendant's motion to dismiss Plaintiff's fraud-

12   based claims — the CLRA, FAL, the "fraudulent" UCL, and common law fraud claims — is

13   DENIED.

14                    ii.        *Whether Plaintiff Plausibly Alleges the Challenged Statements are*

15                                *Misleading to Reasonable Consumers*

16          Defendant argues Plaintiff does not allege that any challenged statement is false in even

17   conclusory terms or allege facts amounting to falsity, but instead alleges they are "misleading."

18   (ECF No. 18-1 at 18.)  Defendant contends Plaintiff does not plausibly plead they are misleading

19   either, addressing each statement in turn.[4]  (*Id.*)  Defendant asserts that Plaintiff does not allege:

20   (1) the Product does not contribute to immune support, brain development, or digestive health; (2)

21   the Product does not contain DHA, lutein, or vitamin E; (3) the Product does not contain 5 HMO

22   prebiotics; (4) two servings of the Product do not have 28 nutrients, or that those nutrients are not

23   important for growth and development, no matter how much sugar the Product contains; and (5)

24   the Product does not contain at least 40% of the Daily Values for iron, calcium, or vitamins C, D,

---

25   [4]        Defendant also argues that, to the extent Plaintiff alleges the statements are misleading

26   because they are nutrient content claims, none of the challenged statements are misleading
     because they are not nutrient content claims.  (*Id.* at 18–19.)  The Court declines to address this

27   argument because, as stated above, it finds Plaintiff adequately alleges the first, second, and
     fourth statements, when read in conjunction with the fifth statement, comprise a nutrient content

28   claim.

1    or E.  (*Id.* at 18–19.)

2            In opposition, Plaintiff argues she adequately pleads Rule 9(b) particularity of misleading

3    labels under the reasonable consumer test, which means she "needs only to minimally allege, with

4    particularity, such statements have the capacity, likelihood, or tendency to deceive or confuse the

5    public, and need not allege nor prove falsity."  (ECF No. 19 at 12–13.)  Plaintiff also maintains

6    she does not have to plead allegations of "harmfulness" to state claims under the UCL, FAL, and

7    CLRA, and it is sufficient to allege the labels are misleading without harm to survive the

8    pleadings stage.  (*Id.* at 14.)

9            In reply, Defendant maintains Plaintiff fails to plausibly allege how the statements are

10   misleading to consumers "acting reasonably in the circumstances" and Plaintiff fails to point to

11   well-pleaded allegations to show how or why each statement is misleading.  (ECF No. 21 at 11

12   (quoting *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023)).)

13           The standard for claims under the UCL, FAL, and CLRA is the "reasonable consumer"

14   test, which requires a plaintiff to show that members of the public are likely to be deceived by the

15   business practice or advertising at issue, or that "the product labeling and ads promoting the

16   products have a meaningful capacity to deceive consumers."  *See McGinity*, 69 F.4th at 1097;

17   *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 938 (9th Cir. 2008); *see also Consumer Advocates v.*

18   *Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1360 (2003).  "The California Supreme Court

19   has recognized that [the UCL, FAL, and CLRA] prohibit explicitly false advertising and

20   advertising that is "either actually misleading[,] or which has the capacity, likelihood[,] or

21   tendency to deceive or confuse the public."  *McGinity*, 69 F.4th at 1097 (quoting *Kasky v. Nike,*

22   *Inc.*, 27 Cal. 4th 939, 951 (2002)).  This "reasonable consumer" test "requires more than a mere

23   possibility that the label might conceivably be misunderstood by some few consumers viewing it

24   in an unreasonable manner."  *Id.* (internal quotation marks and citations omitted).  Rather, it

25   "requires a probability that a significant portion of the general consuming public or of targeted

26   consumers, acting reasonably under the circumstances, could be misled."  *Id.* (internal quotation

27   marks and citations omitted).  Courts often analyze the UCL, FAL, and CLRA statutes together.

28   *See, e.g.*, *Consumer Advocates*, 113 Cal. App. 4th at 1360–62 (analyzing representations under

1  the CLRA, UCL, and FAL together); *Tait v. BSH Home Appliances, Corp.*, No. SACV 10-00711

2  DOC (ANx), 2011 WL 3941387, at *2 (C.D. Cal. Aug. 31, 2011) (same).  The Ninth Circuit has

3  also noted that whether a practice is deceptive "is an issue of fact not generally appropriate for

4  decision on a motion to dismiss" and that it is a "rare situation in which granting a motion to

5  dismiss is appropriate[.]"  *LeGrand*, 655 F. Supp. 3d at 890 (citing *Williams*, 552 F.3d at 938–

6  39).

7       Here, Plaintiff points to the following allegations[5] in support of her contention that the

8  Product's label is misleading or that the statements "have the capacity, likelihood, and tendency

9  to deceive or confuse the public":

10
11
12
   - "Defendants misbrand the Product by making nutrient content claims that are strictly prohibited by the FDA, and by misleading purchasers into believing that its Product provides physical health benefits[.]" (ECF No. 1 ¶ 36.)

13
14
   - "Foods intended for children less than two are prohibited from making such nutrient content claims . . . the Product is accordingly misbranded." (*Id.* ¶¶ 37–38.)

15
16
   - "The nutrient content claims on the Product misleads reasonable consumers into believing the Product will provide physical health benefits for their children, when in fact the Product is harmful." (*Id.* ¶ 41.)

17
18
19
20
   - "By echoing the nutritional concerns of parents and including vague buzzwords, claims, and graphics regarding growth, development, immune support, brain development, and digestive health, Defendant[] induce[s] and mislead[s] consumers into purchasing their Product for fear that a diet without the Product is nutritionally inadequate for their toddlers." (*Id.* ¶ 41.)

21
22
23
   - "For these reasons, Defendant[] marketing the Product as providing physical health benefits for toddlers being a healthful and safe source of nutrients for babies and toddlers is misleading to reasonable consumers[.]" (*Id.* ¶ 52.)

24       First, Plaintiff adequately alleges the Product "misleads reasonable consumers" into

25  believing it will "provide physical health benefits for children" by explaining that the Dietary

26

---

27  [5]     This list is not a comprehensive list of what Plaintiff asserts are her relevant allegations, but a smaller selection that slightly less repetitive and focuses on the crux of Plaintiff's
28  allegations.  (*See* ECF No. 19 at 13–14.)

19

1   Guidelines "recommend that children 'younger than age 2' completely '[a]void foods and

2   beverages with added sugars." (*Id.* at 12.)  As the Court previously noted, Plaintiff sufficiently

3   asserts why dietary needs for children under two years of age are different from the needs of

4   adults and why nutrition in the first 24 months of life is important.  (*Id.*)  Second, the Court finds

5   unpersuasive Defendant's assertion that the "statements never mention sugar" and "[a]ny

6   reasonable consumer interested in Go & Grow's sugar content could review the product's

7   ingredient list to dispel or ameliorate any confusion that might be raised by other truthful labeling

8   statements."  (ECF No. 18-1 at 18 (internal quotation marks and citation omitted).)  Taking as

9   true Plaintiff's allegations that any added sugars before two years of age goes against the Dietary

10  Guidelines and drawing all inferences in Plaintiff's favor, the Court finds it sufficient for Plaintiff

11  to allege that Defendant uses the first, second, and fourth statements on its Product, which

12  Plaintiff sufficiently alleges is an unlawful implied nutrient content claim, which leads reasonable

13  consumers to believe the product indeed provides those physical health benefits when in fact the

14  Product is harmful — i.e., the Product does not actually provide the physical health benefits it

15  claims to provide.

16      Based on the foregoing, the Court finds Plaintiff adequately establishes why the

17  statements on the Product's label are "either actually misleading[,] or [have] the capacity,

18  likelihood[,] or tendency to deceive or confuse the public."  *McGinity*, 69 F.4th at 1097.

19      Accordingly, Defendant's motion to dismiss Plaintiff's fraud-based claims based on the

20  "reasonable consumer" test is DENIED.

21          C.    UCL "Unfair" Claim

22      Defendant argues that, to the extent Plaintiff relies on the "unfair" prong of the UCL, this

23  claim also fails because it entirely overlaps with other claims subject to dismissal.  (ECF No. 18-1

24  at 19.)  Defendant further argues Plaintiff fails to state a claim under the "unfair" prong because

25  the Complaint fails to allege facts to satisfy: (1) the "tethering" test because it does not reference

26  any public policy and none of the challenged statements qualify as an impermissible nutrient

27  content claim; or (2) the "balancing" test because Plaintiff fails to allege her injury was

28  "substantial," her injury was not "outweighed by countervailing benefits," or that consumers

1    could have avoided the injury by reviewing the Nutrition Facts panel.  (*Id.* at 20–21.)

2            In opposition, Plaintiff maintains the UCL permits violations of other laws to be treated as

3    unfair competition that is independently actionable, and she adequately alleges Defendant violates

4    the UCL by fraudulent and unlawful practices.  (ECF No. 19 at 20–21.)  Plaintiff therefore

5    maintains Defendant's arguments regarding the Complaint's failure to satisfy the tethering or

6    balancing test are "beside the point."  (*Id.* at 21.)

7            Indeed, the California Supreme Court has held "[t]he UCL's scope is broad" and "[b]y

8    defining unfair competition to include any '*unlawful . . .* business or practice,'" the law "permits

9    violations of other laws to be treated as unfair competition that is independently actionable."

10    *Kasky*, 27 Cal. 4th at 949 (emphasis in original).

11            Here, as set forth above, the Court finds Plaintiff adequately establishes a claim under the

12    "unlawful" prong of the UCL.  The Court therefore similarly finds Plaintiff adequately establishes

13    a claim under the "unfair" prong of the UCL.  Accordingly, Defendant's motion to dismiss

14    Plaintiff's "unfair" UCL claim is DENIED.

15                        D.      Unjust Enrichment Claim

16            Defendant argues in a footnote that Plaintiff's unjust enrichment claim suffers from the

17    same defects as her statutory and common law fraud claims and should therefore be dismissed on

18    those bases.  (ECF No. 18-1 at 21 n.3.)  Defendant further argues this claim also fails because it is

19    not a standalone cause of action in California.  (*Id.*)  In opposition, Plaintiff maintains that if any

20    of Plaintiff's other claims survive, her claim for unjust enrichment must survive.  (ECF No. 19 at

21    24.)  In reply, Defendant notes Plaintiff concedes this claim "rises and falls with her other

22    claims."  (ECF No. 21 at 14 n.3.)

23            California courts have held "[u]njust enrichment is not a cause of action," but rather it is

24    "just a restitution claim."  *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018).

25    If there is "no actionable wrong, there is no basis for the relief."  *Id.*; *see also Astiana v. Hain*

26    *Celestial Grp.*, 783 F.3d 753, 762 (9th Cir. 2015) ("[I]n California, there is not a standalone cause

27    of action for 'unjust enrichment,' which is synonymous with 'restitution.'").  Further, "[w]hen a

28    plaintiff alleges unjust enrichment, a court may construe the action as a quasi-contract claim

1    seeking restitution." *Astiana*, 783 F.3d at 762.

2          Here, because Plaintiff's adequately alleges sufficient facts to state "unlawful" and

3    "unfair" UCL claims, those claims still stand.  The Court therefore declines to dismiss Plaintiff's

4    unjust enrichment claim.  Accordingly, Defendant's motion to dismiss Plaintiff's unjust

5    enrichment claim is DENIED.

6                        E.    Injunctive Relief Claim

7          Defendant argues Plaintiff's request for injunctive relief fails because (1) she lacks

8    standing to pursue injunctive relief because she does not allege any "real or immediate threat that

9    [she] will be wronged again" in a similar way.[6]  (ECF No. 18-1 at 21–22.)  In opposition, Plaintiff

10   maintains numerous district judges have found standing where "a consumer would not be able to

11   reasonably rely on a defendant's label in the future and expressed an intent to purchase a future

12   product if properly labeled . . . or the veracity of the claims on the labels could be easily or readily

13   verified by looking to other information on the label."  (ECF No. 19 at 21–22 (internal citations

14   removed).)

15         A plaintiff must establish constitutional standing for each type of relief she requests.

16   *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018).  While past wrongs alone

17   are insufficient to establish standing, they can be "evidence bearing on whether there is a real and

18   immediate threat of repeated injury."  *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102

19   (1983)).  The Ninth Circuit has held that a previously deceived customer may have standing to

20   seek an injunction against false labeling, despite knowing or suspecting the advertising was false

21   at the time of original purchase, because the consumer may suffer an "actual and imminent, not

22   conjectural or hypothetical" threat of future harm.  *Id.* at 969 (quoting *Summers v. Earth Island

23   Inst.*, 555 U.S. 488, 493 (2009)).  The Ninth Circuit has articulated two possible types of harm

24   warranting an injunction in such cases, where the consumer plausibly alleges: (1) "she will be

25   unable to rely on the product's advertising or labeling in the future, and so will not purchase the

26   _____

27   [6]    Defendant also argues Plaintiff's request for injunctive relief fails because she does not
      allege she lacks an adequate remedy at law.  (ECF No. 18-1 at 22.)  However, because the Court
28   finds Plaintiff fails to adequately establish standing for injunctive relief, it declines to address
      Defendant's additional argument.

                                        22

1    product although she would like to"; or (2) "she might purchase the product in the future, despite

2    the fact it was once marred by false advertising or labeling, as she may reasonably, but

3    incorrectly, assume the product was improved." *Id.* at 969–70.

4          Here, Plaintiff alleges in the Complaint that she purchased the Product for her child when

5    he was one year old.  (ECF No. 1 at 15.)  Plaintiff alleges she purchased the Product in July 2021

6    for about five to six months thereafter.  (*Id.*)  Plaintiff does not allege she purchased the Product

7    after this five to six month period.  (*See id.*)  Plaintiff further does not plausibly allege that she

8    would like to purchase the Product again in the future and she will be unable to rely on its

9    advertising or labeling.  (*Id.*)  Nor does she allege she might purchase the Product in the future on

10   a reasonable but incorrect assumption that the Product was improved.  (*Id.*)  The Court therefore

11   agrees with Defendant that Plaintiff fails to establish any "actual and imminent" threat that she

12   will be wronged again by the Product.  The Court finds the instant case is unlike Plaintiff's

13   citation to *Krommenhock v. Post Foods, LLC*, 255 F. Supp. 3d 938, 967 (N.D. Cal. June 1, 2017)

14   because plaintiffs plausibly allege in *Krommenhock* that "they would be willing to purchase

15   Post's cereals in the future if they were accurately described and the cereals were either (i)

16   reformulated to reduce added sugar, or (ii) priced lower so they could be purchased as a treat."

17   (ECF No. 19 at 22.)  Unlike the plaintiffs in *Krommenhock*, Plaintiff fails to allege here that she

18   would purchase the Product again in the future.

19         Because the Court cannot determine at this juncture "that the pleading could not possibly

20   be cured by the allegation of other facts," the Court will grant Plaintiff leave to amend her claim

21   for injunctive relief.  *See Lopez*, 203 F.3d at 1130.  Accordingly, Defendant's motion to dismiss

22   Plaintiff's injunctive relief claim is GRANTED with leave to amend.

23       **IV.**   **CONCLUSION**

24         For the foregoing reasons, the Court GRANTS in part and DENIES in part Defendant's

25   Motion to Dismiss (ECF No. 18) as follows:

26          1.  Defendant's motion to dismiss Plaintiff's "unlawful" UCL claim is DENIED;

27          2.  Defendant's motion to dismiss Plaintiff's fraud-based claims — the CLRA, FAL,

28             the "fraudulent" UCL, and common law fraud claims — is DENIED;

3.  Defendant's motion to dismiss Plaintiff's "unfair" UCL claim is DENIED;

4.  Defendant's motion to dismiss Plaintiff's unjust enrichment claim is DENIED; and

5.  Defendant's motion to dismiss Plaintiff's injunctive relief claim is GRANTED
    with leave to amend.

Plaintiff may file an amended complaint not later than thirty (30) days from the electronic filing date of this Order. Defendant shall file a responsive pleading not later than twenty-one (21) days from the electronic filing date of the amended complaint. If Plaintiff opts not to file an amended complaint, the case shall proceed on Plaintiff's remaining claims in the action.

IT IS SO ORDERED.

Date: August 8, 2025

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

24